UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
---------------------------------------------------------------------------X
EFRAIN MORALES, MARCO TULIO MORALES, and
FREDDY ANTONIO MORALES, individually and on behalf
of all others similarly situated,

                                      Plaintiffs,

                                 -against-

AQUA PAZZA LLC d/b/a FIN RAW BAR & KITCHEN, FIN
OYSTER AND COCKTAIL BAR, ESSEX RESTAURANT
GROUP LLC d/b/a THE CROSBY and d/b/a FIN RAW BAR
& KITCHEN, SALUTE BRICK OVEN BISTRO, PIER
VILLAGE STINGRAY, LLC d/b/a FIN OYSTER AND
COCKTAIL BAR LONG BRANCH, GIROLAMO
CERRIGONE JR. a/k/a GERRY CERRIGONE, AND
ROBERT GACCIONE,

                                      Defendants.
---------------------------------------------------------------------------X

Civil Action No.

COMPLAINT

      Plaintiffs Efrain Morales ("Efrain"), Marco Tulio Morales ("Marco"), and Freddy Antonio Morales ("Freddy") ( collectively ("Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, Katz Melinger PLLC, complaining of the defendants, Aqua Pazza LLC d/b/a Fin Raw Bar & Kitchen ("Fin Raw"), Fin Oyster and Cocktail Bar ("Fin Oyster"), Essex Restaurant Group LLC d/b/a The Crosby and d/b/a Fin Raw Bar & Kitchen ("Crosby"), Salute Brick Oven Bistro ("Salute"), Pier Village Stingray, LLC d/b/a Fin Oyster and Cocktail Bar Long Branch ("Fin Long Branch"), Girolamo Cerrigone Jr. a/k/a Gerry Cerrigone ("Gerry"), and Robert Gaccione ("Robert") (collectively, "Defendants"), respectfully allege as follows:

**I. Nature of Action, Jurisdiction, and Venue**

      1.     This is an action seeking equitable and legal relief for Defendants' violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. ("FLSA"), the New

Jersey Wage and Hour Law, N.J.S.A. 34:11-56(a) *et seq.* ("NJWHL"), and the New Jersey Wage Payment Act, N.J.S.A. 34:11-4.1, *et seq.* ("NJWPA").

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action arising under the FLSA.

3. This Court has supplemental jurisdiction over the claims arising under the New Jersey Wage and Hour Law and the New Jersey Wage Payment Act pursuant to 28 U.S.C. § 1367, in that the state law claims are so closely related to Plaintiffs' FLSA claims as to form the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and Defendants conduct business through their employees, including Plaintiffs, within this judicial district.

## II. Parties

5. During the relevant period, Plaintiffs resided in the state of New Jersey.

6. At all relevant times, Plaintiffs were employed by Defendants as defined by 29 U.S.C. § 203(e), N.J.S.A. 34:11-56a1(h) and N.J.S.A. 34:11-4.1(b).

7. Fin Raw is a domestic limited liability company with its principal place of business located at 183 Glenridge Avenue, Montclair, New Jersey 07042.

8. Fin Oyster has a principal place of business located at 37 Maple Street, Summit, New Jersey 07901.

9. Crosby is a domestic limited liability company with its principal place of business located at 193 Glenridge Avenue, Montclair, New Jersey 07042.

10. Salute has a principal place of business located at 173 Glenridge Avenue, Montclair, New Jersey 07042.

11. Fin Long Branch is a domestic limited liability company with its principal place of business located at 183 Glenridge Avenue, Montclair New Jersey 07042 and/or 20 Centennial Drive Long Branch, New Jersey 07740.

12. Gerry is an individual residing, upon information and belief, in the state of New Jersey.

13. Robert is an individual residing, upon information and belief, in the state of New Jersey.

14. At all relevant times, Gerry was, and still is, an officer, director, shareholder and/or person in control of Fin Raw, Fin Oyster, Fin Long Branch, Crosby, and Salute.

15. At all relevant times, Gerry was, and still is, a senior management level employee of Fin Raw, Fin Oyster, Fin Long Branch, Crosby, and Salute, who exercised significant control over the companies' operations; had the authority to hire, fire, and discipline employees; set employees' work schedules and conditions of employment; determine the rate and method of payment for employees; and maintain employees' employment records.

16. At all relevant times, Robert was, and still is, an officer, director, shareholder and/or person in control of Fin Raw, Fin Oyster, Fin Long Branch, Crosby, and Salute.

17. At all relevant times, Robert was, and still is, a senior management level employee of Fin Raw, Fin Oyster, Fin Long Branch, Crosby, and Salute, who exercised significant control over the companies' operations; had the authority to hire, fire, and discipline employees; set employees' work schedules and conditions of employment; determine the rate and method of payment for employees; and maintain employees' employment records.

18. Fin Raw, Fin Oyster, Fin Long Branch, Crosby, and Salute operate as a single enterprise. They are engaged in the same activities, share common ownership, and have a common business purpose. Defendants maintain a centralized organizational structure, control, and human resources personnel, and implement consistent wage and hour policies, procedures, and employment practices across all restaurants. Restaurant supplies and employees are interchanged among the restaurants. Defendants are jointly marketed and promoted on each other's social media accounts and on Defendants' websites.

19. Although Plaintiffs did not work at each and every location of Defendants, Defendants share identical unlawful wage and hour policies and therefore are properly named for their outstanding liability to the FLSA Collective Plaintiffs.

20. Upon information and belief, Defendants' revenues are in excess of the minimum required to fall within the jurisdiction of the FLSA.

21. Defendants operate in interstate commerce.

22. Defendants are subject to suit under the statutes alleged above.

### III. FLSA Collective Action Allegations

23. The First Cause of Action in this Complaint, which arises out of the FLSA, is brought by Plaintiffs on behalf of themselves and similarly situated persons who were employed since the date three (3) years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective Plaintiffs").

24. The FLSA Collective Plaintiffs consist of no less than fifteen (15) similarly situated current and former cooks and dishwasher employed by Defendants, who work or worked in excess of forty (40) hours per week and are victims of Defendants' common policies and

practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them overtime compensation.

25. As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*, failing to pay employees the applicable overtime rates for all hours worked in excess of forty (40) per week.

26. Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

27. Defendants' unlawful conduct has been intentional, willful, and in bad faith, and has caused significant damages to Plaintiffs and the FLSA Collective Plaintiffs.

28. The FLSA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

### IV. Factual Allegations

#### Plaintiff Efrain

29. Defendants employed Efrain as a cook from in or around 2014 until on or around July 25, 2019.

30. From in or around 2014 until on or around July 6, 2018, Efrain worked as a cook at Fin Raw.

31. During the aforementioned period, Defendants also required Efrain to work at the Crosby and Fin Oyster whenever another employee of Defendants was unable to work his or her designated shift.

32. From on or around July 6, 2018 until on or around July 25, 2019, Efrain worked as a cook at Fin Long Branch.

33. As a cook, Efrain's job duties included, *inter alia*, cutting meats, vegetables, and other food items; preparing a variety of dishes on the menu to be served to customers; and cleaning cooking equipment and utensils.

34. From in or around 2014 until on or around July 6, 2018, Efrain worked Tuesdays to Thursdays from approximately 1:00 p.m. to approximately 10:00 p.m.; Fridays and Saturdays from approximately 1:00 p.m. to approximately 11:00 p.m.; and Sundays from approximately 1:00 p.m. to approximately 9:00 p.m., without any meal or rest breaks, for approximately fifty-five (55) hours worked per week.

35. During this period, Efrain was compensated at a fixed rate of $850.00 per week regardless of how many hours he worked per week.

36. From on or around July 6, 2018 until on or around July 25, 2019, during the months of December, January, and February of each calendar year (the "Winter Months"), Efrain worked Mondays and Wednesday through Sundays from approximately 3:00 p.m. until between 9:00 p.m. and 10:00 p.m., without any meal or rest breaks, for an average of approximately thirty-nine (39) hours worked per week during the Winter Months.

37. During the remaining months of each calendar year of the aforementioned period, Efrain worked Mondays to Thursdays from approximately 11:00 a.m. to approximately 10:00 p.m.; Fridays and Saturdays from approximately 11:00 a.m. to approximately 11:00 p.m.; and

Sundays from approximately 11:00 a.m. to approximately 9:00 p.m., without any meal or rest breaks, for approximately seventy-eight (78) hours worked per week.

38. From on or around July 6, 2018 until on or around July 25, 2019, Defendants compensated Efrain at a fixed rate of $1,100.00 per week regardless of the numbers of hours Efrain worked per week.

39. However, Defendants failed to compensate Efrain with any wages for all hours worked from in or around February 2019 until in or around April 2019.

40. Defendants did not employ a time keeping system to record the number of hours that Efrain worked throughout his employment with Defendants.

41. Efrain was sometimes paid by check and sometimes paid in cash.

### Plaintiff Marco

42. Defendants employed Marco as a cook from in or around June 2017 until on or around July 25, 2019.

43. From in or around June 2017 until on or around July 6, 2018, Marco worked as a cook at Fin Raw.

44. During the aforementioned period, Defendants also required Marco to work at the Crosby whenever another employee of Defendants was unable to work his or her designated shift.

45. From on or around July 6, 2018 until on or around July 25, 2019, Marco worked as a cook at Fin Long Branch.

46. As a cook, Marco's job duties included, *inter alia*, cutting meats, vegetables, and other food items; preparing a variety of dishes on the menu to be served to customers; and washing dishes.

47. From on or around June 2017 until on or around July 6, 2018, Marco worked Tuesdays to Thursdays from approximately 1:00 p.m. to approximately 10:00 p.m.; Fridays and Saturdays from approximately 1:00 p.m. to approximately 11:00 p.m.; and Sundays from approximately 1:00 p.m. to approximately 9:00 p.m., without any meal or rest breaks, for a total of approximately fifty-five (55) hours worked per week.

48. From in or around June 2017 until in or around January 2018, Marco was compensated at a fixed rate of $525.00 per week regardless of the number of hours Marco worked per week.

49. From in or around January 2018 until on or around July 5, 2018, Marco was compensated at a fixed rate of $600.00 per week regardless of the number of hours Marco worked per week.

50. From on or around July 6, 2018 until on or around July 25, 2019, during the Winter Months, Marco worked Mondays and Wednesday through Sundays from approximately 3:00 p.m. until between 9:00 p.m. and 10:00 p.m., without any meal or rest breaks, for an average of approximately thirty-nine (39) hours worked per week during the Winter Months.

51. During the remaining months of each calendar year of the aforementioned period, Marco worked Mondays to Thursdays from approximately 11:00 a.m. to approximately 10:00 p.m.; Fridays and Saturdays from approximately 11:00 a.m. to approximately 11:00 p.m.; and Sundays from approximately 11:00 a.m. to approximately 9:00 p.m., without any meal or rest breaks, for approximately seventy-eight (78) hours worked per week.

52. From on or around July 6, 2018 until on or around July 25, 2019, Marco was paid at a fixed rate of $700.00 per week regardless of the amount of hours Marco worked per week.

53. Defendants also failed to compensate Marco for all hours worked from in or around February 2019 until in or around April 2019.

54. Defendants did not employ a time keeping system to record the number of hours that Marco worked throughout his employment with Defendants.

55. Marco was sometimes paid by check and sometimes paid in cash.

**Plaintiff Freddy**

56. Defendants employed Freddy as a cook from in or around January 2016 until on or around July 25, 2019.

57. From in or around January 2016 until on or around July 6, 2018, Freddy worked as a cook at Salute.

58. From on or around July 6, 2018 until on or around July 25, 2019, Freddy worked as a cook at Fin Long Branch.

59. As a cook, Freddy's job duties included, *inter alia*, preparing pizzas, salads, pastas; chopping vegetables; preparing sauces and dressings; and washing and organizing dishes.

60. From in or around January 2016 until on or around July 6, 2018, Freddy worked Mondays, Tuesdays, and Thursdays from approximately 11:00 a.m. until approximately 10:00 p.m.; Fridays and Saturdays from approximately 11:00 a.m. until approximately 11:00 p.m.; and Sundays from approximately 11:00 a.m. to approximately 9:00 p.m., with a daily twenty (20) minute meal break, for a total of approximately sixty-five (65) hours worked per week.

61. From on or around July 6, 2018 until on or around July 25, 2019, during the Winter Months, Freddy worked Mondays and Wednesday through Sundays from approximately 3:00 p.m. until between 9:00 p.m. and 10:00 p.m., without any meal or rest breaks, for an average of approximately thirty-nine (39) hours worked per week during the Winter Months.

62. During the remaining months of each calendar year of the aforementioned period, Freddy worked Mondays to Thursdays from approximately 11:00 a.m. to approximately 10:00 p.m.; Fridays and Saturdays from approximately 11:00 a.m. to approximately 11:00 p.m.; and Sundays from approximately 11:00 a.m. to approximately 9:00 p.m., without any meal or rest breaks, for approximately seventy-eight (78) hours worked per week.

63. From in or around January 2016 until in or around April 2017, Defendants compensated Freddy at a fixed rate of $400.00 per week, regardless of the number of hours Freddy worked per week.

64. From in or around May 2017 until in or around June 2017, Defendants compensated Freddy at a fixed rate of $500.00 per week, regardless of the number of hours Freddy worked per week.

65. From in or around July 2017 until on or around July 5, 2018, Defendants compensated Freddy at a fixed rate of $550.00 per week, regardless of the number of hours Freddy worked per week.

66. From in or around July 6, 2018 until in or around December 2018, Defendants compensated Freddy at a fixed rate of $750.00 per week, regardless of the number of hours Freddy worked per week.

67. From in or around January 2019 until in or around February 2019, Defendants compensated Freddy at a fixed rate of $800.00 per week, regardless of the number of hours Freddy worked per week.

68. From in or around February 2019 until on or around July 25, 2019, Defendants compensated Freddy at a fixed rate of $900.00 per week, regardless of the number of hours Freddy worked per week.

69. Defendants failed to compensate Freddy for all hours worked from in or around February 2019 until in or around April 2019.

70. Furthermore, from in or around May 2019 until on or around July 25, 2019, Defendants failed to compensate Freddy with his complete weekly wage and only compensated Freddy with $750.00 out of the $900.00 that was due to Freddy per week during the aforementioned period.

71. Freddy was sometimes paid by check and sometimes paid in cash.

72. Defendants did not employ a time keeping system to record the number of hours that Freddy worked throughout his employment with Defendants.

### Defendants' Violations of the FLSA, NJWHL, and NJWPA

73. Plaintiffs and the FLSA Collective Plaintiffs regularly worked more than forty (40) hours per week during their employment with Defendants.

74. However, Defendants failed to compensate Plaintiffs and the FLSA Collective Plaintiffs at their proper overtime rates of one and one-half times their regular hourly rates of pay for all hours worked in excess of forty (40) per week.

75. Instead, Defendants compensated Plaintiffs and the FLSA Collective Plaintiffs at a fixed weekly rate and failed to compensate Plaintiffs and the FLSA Collective Plaintiffs with overtime wages for all hours worked in excess of forty (40) hours per week.

76. Neither Plaintiffs nor the FLSA Collective Plaintiffs supervised any employees, nor were they employed in executive, professional, or administrative capacities.

77. As a result, Plaintiffs and the FLSA Collective Plaintiffs were non-exempt employees under the FLSA and NJWHL.

78. Defendants' refusal to pay Plaintiffs and the FLSA Collective Plaintiffs all wages owed to them is an intentional and willful violation of the FLSA and New Jersey's wage laws.

79. Plaintiffs and the FLSA Collective Plaintiffs sustained damages from the acts and omissions described herein.

### AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE FLSA COLLECTIVE PLAINTIFFS
(Overtime Violations under the Fair Labor Standards Act)

80. Plaintiffs, individually and on behalf of the FLSA Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

81. Pursuant to the applicable provisions of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs were entitled to overtime compensation of one and one-half times their regular hourly rate for all hours worked in excess of forty (40) per week.

82. Plaintiffs and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

83. Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs overtime wages of one and one-half times their regular rate for each hour worked in excess of forty (40) in a week.

84. As a result of Defendants' violations of the law and failure to pay Plaintiffs and the FLSA Collective Plaintiffs the required overtime wages, Plaintiffs and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

85. As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and the FLSA Collective Plaintiffs are entitled to liquidated damages.

86. Judgment should be entered in favor of Plaintiffs and the FLSA Collective Plaintiffs and against Defendants on the First Cause of Action in the amount of their respective unpaid overtime wages, liquidated damages, reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
(Overtime Violations under the New Jersey Wage and Hour Law)

87. Plaintiffs repeat and reallege all prior allegations set forth above.

88. Pursuant to the applicable provisions of N.J.S.A. 34:11-56a(4), Plaintiffs were entitled to an overtime wage of one and one-half times their regular hourly rate for all hours worked in excess of forty (40) per week.

89. Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

90. Throughout the relevant period, Defendants knowingly failed to pay Plaintiffs overtime wages of one and one-half times their regular rate of pay for each hour worked in excess of forty (40) per week.

91. As a result of Defendants' violations of the law and failure to pay Plaintiffs the required overtime wages, Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with reasonable attorneys' fees, interest, and costs.

92. As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

93. Judgment should be entered in favor of Plaintiffs and against Defendants on the Second Cause of Action in the amount of Plaintiffs' unpaid overtime wages, liquidated damages, reasonable attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
(Failure to Pay Minimum Wage in Violation of the FLSA)

94. Plaintiffs repeat and reallege all prior allegations set forth above.

95. Pursuant to the applicable provisions of the FLSA, Plaintiffs were entitled to the statutory minimum hourly wage for the hours they worked.

96. Defendants knowingly failed to pay Plaintiffs the statutory minimum wage for all of the hours they worked.

97. As a result of Defendants' violations of the law and failure to pay Plaintiffs the required minimum wages, Plaintiffs have been damaged and are entitled to recover from Defendants all minimum wages due, along with all reasonable attorneys' fees, interest, and costs.

98. As Defendants did not have a good faith basis to believe that their failure to pay minimum wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

99. Judgment should be entered in favor of Plaintiffs and against Defendants on the Third Cause of Action in the amount of their unpaid minimum wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
(Failure to Pay Minimum Wage in Violation of New Jersey Wage Payment Law)

100. Plaintiffs repeat and reallege all prior allegations set forth above.

101. Pursuant to the applicable provisions of the N.J.S.A. 34:11-56a(4), Plaintiffs were entitled to the statutory minimum hourly wage for the hours they worked.

102. Defendants knowingly failed to pay Plaintiffs the statutory minimum wage for all of the hours they worked.

103. As a result of Defendants' violations of the law and failure to pay Plaintiffs the required minimum wages, Plaintiffs have been damaged and are entitled to recover from Defendants all minimum wages due, along with all reasonable attorneys' fees, interest, and costs.

104. Judgment should be entered in favor of Plaintiffs and against Defendants on the Fourth Cause of Action in the amount of their unpaid minimum wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
(Failure to Timely Pay Wages in Violation of New Jersey Wage Payment Law)

105. Plaintiffs repeat and reallege all prior allegations.

106. At all relevant times, Defendants failed to pay Plaintiffs the full amount of wages due to them at least twice during each calendar month, on regular paydays designated in advance, in violation of N.J.S.A. 34:11-4.2.

107. Defendants also failed to pay Plaintiffs all wages due to them not later than the regular payday for the pay period in which they were terminated, in violation of N.J.S.A. 34:11-4.3.

108. As a result of Defendants' violations of the law and failure to pay Plaintiffs all wages due, including overtime wages, Plaintiffs have been damaged and are entitled to recover from Defendants all unpaid wages, along with interest and costs.

109. Judgment should be entered in favor of Plaintiffs and against Defendants on the Fifth Cause of Action for all unpaid wages, interest, costs, and such other legal and equitable relief as this Court deems just and proper.

**WHEREFORE**, Plaintiffs prays for relief as follows:

a) on the First Cause of Action on behalf of Plaintiffs and the FLSA Collective Plaintiffs for all overtime wages due, liquidated damages, and all reasonable attorneys' fees in an amount to be determined by this Court;

a) on the Second Cause of Action for all unpaid overtime wages due to Plaintiffs, liquidated damages, and all reasonable attorneys' fees in an amount to be determined by this Court;

b) on the Third Cause of Action for all unpaid minimum wages due to Plaintiffs, liquidated damages, and all reasonable attorneys' fees in an amount to be determined by this Court;

c) on the Fourth Cause of Action for all unpaid minimum wages due to Plaintiffs, liquidated damages, and all reasonable attorneys' fees in an amount to be determined by this Court;

d) On the Fifth Cause of Action for all unpaid wages due to Plaintiffs, liquidated damages, and all reasonable attorneys' fees in an amount to be determined by this Court;

e) interest;

f) costs and disbursements; and

g) such other and further relief as is just and proper.

Dated: New York, New York
June 1, 2020

>*/s/ Nicole Grunfeld*_____
>Nicole Grunfeld
>KATZ MELINGER PLLC
>280 Madison Avenue, Suite 600
>New York, New York 10016
>(212) 460-0047
>ndgrunfeld@katzmelinger.com
>*Attorneys for Plaintiffs*