UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>MADELINE COX ARLEO<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

May 27, 2022

VIA ECF

**LETTER ORDER**

Re:   Efrain Morales, et al. v. Aqua Pazza LLC, et al.
      Civil Action No. 20-6690

Dear Litigants:

Before the Court is Plaintiffs Efrain Morales' ("Efrain"), Marco Tulio Morales' ("Marco"), and Freddy Antonio Morales' ("Freddy" and together with Efrain and Marco, "Plaintiffs") Motion for Default Judgment, ECF No. 64, against Defendants Salute Brick Oven Bistro ("Salute"), Pier Village Stingray, LLC d/b/a Fin Oyster and Cocktail Bar Long Branch ("Pier Village"), and Gerry Cerrigone ("Cerrigone" and together with Salute and Pier Village, the "Cerrigone Defendants"). Defendants Aqua Pazza LLC d/b/a Fin Raw Bar & Kitchen ("Aqua Pazza"), Fin Oyster and Cocktail Bar ("Fin Oyster"), Essex Restaurant Group LLC d/b/a The Crosby and d/b/a Fin Raw Bar and Kitchen ("Essex"), and Robert Gaccione ("Gaccione" and together with Aqua Pazza, Fin Oyster, and Essex, the "Gaccione Defendants") have filed a limited opposition to Plaintiffs' Motion, ECF No. 72. For the reasons set forth below, the Motion is **GRANTED**.

**I.   BACKGROUND**[1]

This action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), arises out of Defendants' alleged nonpayment of certain wages owed to Plaintiffs, their employees. See generally Compl., ECF No. 1. During the course of Plaintiffs' employment, Defendants typically paid each Plaintiff a weekly wage but allegedly failed to pay any overtime compensation from June 1, 2017 to July 25, 2019[2] or any wages at all from February 2019 to April 2019. Id. ¶¶ 34-39, 47-53, 60-70.

Plaintiffs were employed as chefs by Aqua Pazza, Fin Oyster, Essex, Salute, and Pier Village (the "Restaurants"). Id. ¶¶ 30, 32, 43, 45, 57-58. While each Plaintiff did not necessarily work for every individual Restaurant, the Complaint alleges that the Restaurants collectively operated as a single enterprise with common ownership, purpose, organization, human resources personnel, wage and hour policies, and employment practices. Id. ¶¶ 18-19. Plaintiffs also assert

---

[1] These facts are drawn from the Complaint, ECF No. 1.

[2] Efrain and Freddy were employed prior to this date; however as discussed below, Plaintiffs only seek damages for the period of June 1, 2017 to July 25, 2019.

that the Restaurants are jointly marketed on each other's social media accounts and share supplies and employees. Id. ¶ 18. For example, though Efrain worked primarily at Aqua Pazza from 2014 to July 2018, he was required to work at the Essex and Fin Oyster locations when another employee was unable to work. Id. ¶ 31. Individual Defendants Gaccione and Cerrigone jointly controlled the Restaurants, made employment decisions for the Restaurants, and had the authority to set work schedules and determine conditions of employment, such as employees' rates and methods of pay. Id. ¶¶ 14-17.

On June 1, 2020, Plaintiffs filed a five-count complaint against Defendants alleging (1) overtime violations under the FLSA, id. ¶¶ 80-86 ("Count I"); (2) overtime violations under the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a, et seq. ("NJWHL"), id. ¶¶ 87-93 ("Count II"); (3) failure to pay the federal minimum wage, in violation of the FLSA, id. ¶¶ 94-99 ("Count III"); (4) failure to pay the New Jersey state minimum wage, in violation of the NJWHL, id. ¶¶ 100-104 ("Count IV"); and (5) failure to fully pay wages due, in violation of the New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1, et seq. ("NJWPL"), id. ¶¶ 105-09 ("Count V").

On January 29, 2021, the Gaccione Defendants filed an answer to the Complaint and asserted cross-claims for indemnification and other relief against the Cerrigone Defendants. ECF No. 22. The Clerk of Court entered default against the Cerrigone Defendants with respect to the Complaint on August 6, 2021.[3] The Cerrigone Defendants have not answered or otherwise responded to the Complaint as of the date of this Order.

## II. LEGAL STANDARD

In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by [the] defendant." DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 (3d Cir. 2005). Before entering default judgment, the Court must determine whether (1) it has jurisdiction over the subject matter and parties; (2) the defendants have been properly served; (3) the complaint sufficiently pleads a cause of action; (4) the plaintiff has proved damages; and (5) default judgment is otherwise appropriate. See Wilmington Savings Fund Soc., FSB v. Left Field Props., LLC, No. 10-4061, 2011 WL 2470672, at *1 (D.N.J. June 20, 2011); Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008); Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008).

## III. ANALYSIS

### A. Jurisdiction and Service

The Court must first assure itself that jurisdiction is proper and that the Cerrigone Defendants have been properly served. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the Complaint asserts violations of the FLSA, a federal law. The Court also has general personal jurisdiction over the Cerrigone Defendants because Cerrigone resides in New Jersey, and both Salute and Pier Village maintain a principal place of business in New Jersey. Compl. ¶¶ 10-12; see also Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924

---

[3] The Clerk has also entered default against the Cerrigone Defendants with respect to the Gaccione Defendants' pending cross-claims. The Gaccione Defendants have not yet moved for default judgment.

(2011). Finally, the docket reflects personal service of the Summons & Complaint upon Cerrigone in both his individual capacity and in his capacity as managing agent for Salute and Pier Village. ECF Nos. 58.1. 58.2, 58.3; see also Fed. R. Civ. P. 4(e)(2)(A), (h)(1)(B).

The Court will therefore assess the Complaint to determine whether it states a viable cause of action.

### B.     Liability[4]

Plaintiffs allege that the Cerrigone Defendants violated the FLSA, NJWHL, and NJWPL by failing to pay certain wages. They have stated viable claims under each statute.[5]

#### 1.     FLSA and NJWHL (Counts I-IV)

Plaintiffs allege that Salute, Pier Village, and Cerrigone may each be held jointly liable under the FLSA and the NJWHL for (a) overtime wages owed to them from June 1, 2017 to July 25, 2019, and (b) minimum wages owed to them from February 2019 to April 2019.

To state a prima facie claim under the FLSA, a plaintiff must allege that (1) he was an employee of the defendant; (2) the defendant was "engaged in commerce"; and (3) the defendant failed to pay the federal minimum wage or overtime compensation for hours worked in excess of forty in a given week. See Perez v. Express Scripts, Inc., No. 19-7752, 2020 WL 7654305, at *2 (D.N.J. Dec. 23, 2020) (citations omitted); 29 U.S.C. §§ 206, 207, 216(b). Once a plaintiff establishes an employer-employee relationship, the burden shifts to the defendant to prove its "entitlement to any exemptions or exceptions." Clews v. County of Schuylkill, 12 F.4th 353, 359 (3d Cir. 2021). The NJWHL is interpreted similarly to the FLSA and provides a parallel cause of action for nonpayment of New Jersey's state minimum wage or overtime compensation. See Perez, 2020 WL 7654305, at *2; N.J.S.A. §§ 34:11-56a4(a)-(b), 34:11-56a25.

From June 1, 2017 to July 6, 2018, Efrain and Marco principally worked at Aqua Pazza, while Freddy worked at Salute. Id. ¶¶ 30, 43, 57. Plaintiffs each worked at Pier Village from July 6, 2018 to July 25, 2019, Compl. ¶¶ 32, 45, 58. Though varying entities owned each individual Restaurant, Plaintiffs allege that they were jointly employed by all of the Restaurants, which, in reality, operated as a cohesive enterprise controlled by Gaccione and Cerrigone. Id. ¶¶ 14-18.

The FLSA and NJWHL define "employer" to include . . . "any person . . . acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); N.J.S.A. § 34:11-56a1(g). A "single individual may stand in the relation of an employee to two

---

[4] The Court assesses whether the Complaint states a claim upon which relief may be granted under the same standards applicable to a motion for dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the nonmoving party. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint will survive review if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[5] As a threshold matter, the Court notes that Plaintiffs brought this case as a putative "collective action" pursuant to 29 U.S.C. § 216(b). See Compl. ¶¶ 23-28. Plaintiffs have not moved for conditional certification of the collective, and it appears that no other plaintiffs have opted into the collective. See generally Halle v. W. Penn Allegheny Health Sys. Inc., 842 F.3d 215, 224-26 (3d Cir. 2016) (discussing procedure governing FLSA collective actions). The Court will therefore assess the Motion only as it pertains to Plaintiffs' individual claims.

3

or more employers at the same time." In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig., 683 F.3d 462, 467-68 (3d Cir. 2012). "[W]here two or more employers exert significant control over the same employees," such that "they share or co-determine those matters governing essential terms and conditions of employment—they constitute 'joint employers' under the FLSA." Id. at 468 (citations, quotations, and alterations omitted). Further, an individual supervisor may qualify as an "employer" if he "exercises supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation while acting in the employer's interest." Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 153 (3d Cir. 2014) (citation omitted).

To determine whether a particular entity or individual is a "joint employer," the court must look to "economic realities," including whether the alleged employer has "(1) authority to hire and fire employees; (2) authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (3) day-to-day supervision, including employee discipline; and (4) control of employee records, including payroll, insurance, taxes, and the like." In re Enter., 683 F.3d at 469. These Enterprise factors "do not constitute an exhaustive list . . . and should not be blindly applied." Id. (citation omitted). The ultimate inquiry is highly fact specific and, as such, is typically unsuitable for resolution on the pleadings. See, e.g., Thompson, 748 F.3d at 148-49.

Considering the Enterprise factors, the Complaint plausibly alleges that Plaintiffs were jointly employed by each Cerrigone Defendant. With respect to the Restaurants, Plaintiffs assert that the entities maintained a centralized organizational structure, shared human resources personnel, and implemented uniform wage and hour policies and other employment practices. Compl. ¶ 18. Most critically, the Complaint alleges that employees were shared amongst the Restaurants and includes specific examples where Plaintiffs were required to work at other Restaurants as a condition of their employment. Id. ¶¶ 18, 31, 44. Plaintiffs further allege that Cerrigone exercised control over each of the Restaurants and had authority to hire, fire, and discipline employees, determine employee pay and schedules, and maintain employee records. Id. ¶ 15. At the pleading stage, such allegations suffice to state a plausible claim of joint employment for the period of June 1, 2017 to July 25, 2019.[6]

Turning to the remaining elements of Plaintiffs' FLSA and NJWHL claims, Plaintiffs have alleged that the Cerrigone Defendants operated in interstate commerce, id. ¶ 21, and failed to make certain overtime and minimum wage payments required by federal and state law, id. ¶¶ 34-39, 47-53, 60-70, 83, 90, 96, 101. Plaintiffs have therefore stated a prima facie case under both statutes. Moreover, as parties in default, the Cerrigone Defendants have not carried their burden to show that an exemption applies.[7]

---

[6] The Court acknowledges the limited opposition to the Motion filed by the Gaccione Defendants, which generally argues that the affidavits and evidence submitted by Plaintiffs fail to establish that the Gaccione Defendants acted jointly with the Cerrigone Defendants with respect to the Restaurants owned by Pier Village and Salute. ECF No. 72. On a motion for default judgment, however, the Court need only determine whether the Complaint plausibly alleges a joint-employer relationship. To be clear, the Court takes no position on whether Plaintiffs can prove their claim of joint employment.

[7] Among other things, the FLSA and NJWHL exempt the payment of overtime to employees in a "bona fide executive, administrative, or professional capacity." 29 U.SC. § 213(a)(1); N.J.S.A. § 34:11-56a4(b). Plaintiffs have alleged that they never supervised any employees or otherwise worked in such a capacity. Compl. ¶ 76.

4

The Court must lastly address the applicable statute of limitations. The FLSA provides that a cause of action must be "commenced within two years" unless it arises from a "willful violation," in which case it "may be commenced within three years." 29 U.S.C. § 255(a). "[A] separate cause of action . . . accrues at each regular payday immediately following the work period during which the services were rendered." D'Agostino v. Domino's Pizza, No. 17-11603, 2018 WL 1914239, at *6 (D.N.J. Apr. 23, 2018).[8]

Plaintiffs filed this action on June 1, 2020 and seek compensation for services rendered from June 1, 2017 to July 25, 2019. See generally Declaration of Katherine Morales ("K. Morales Decl."), ECF No. 69. The Complaint further alleges that the Cerrigone Defendants intentionally and willfully failed to pay the wages required by law. Compl. ¶ 78. Accordingly, this action was timely commenced.

Counts I through IV therefore state viable claims for relief under the FLSA and NJWHL.

### 2.     NJWPL (Count V)

The NJWPL provides that "every employer shall pay the full amount of wages due to his employees at least twice during each calendar month" and that an employer may not "withhold or divert any portion of an employee's wages" except under specifically defined circumstances, which do not apply here. N.J.S.A. §§ 34:11-4.2, 34:11-4.4. Prior to August 6, 2019, the NJWPL provided employees with "an implied right to bring suit . . . against their employers for unpaid wages." Jones v. Hesp Solar, No. 20-13056, 2021 WL 1904734, at *8 (D.N.J. May 12, 2021) (citation omitted).[9] Like the NJWHL, the NJWPL defines "employer" to include an individual with control over the entity or entities employing the plaintiff. N.J.S.A. § 34:11-4.1(a); see also Perez v. Access Bio, Inc., No. A-3071-16T4, 2019 WL 3297297, at *6 (N.J. Super. Ct. App. Div. July 23, 2019) (applying Enterprise factors to determine whether entities were joint employers under the NJWHL and NJWPL).

Plaintiffs have alleged that for services rendered from February 2019 to April 2019, Plaintiffs were due a fixed weekly payment but that the Cerrigone Defendants failed to compensate them. Compl. ¶¶ 38-39, 52-53, 68-70. Count V therefore states a viable claim under the NJWPL.

### C.     Damages

As Counts I through V each state a viable cause of action against the Cerrigone Defendants, the Court must now determine whether Plaintiffs have proven damages. Plaintiffs seek to recover unpaid compensation, liquidated damages, pre-judgment interest, and reasonable costs and attorney's fees.

---

[8] For claims accruing prior to August 6, 2019, the NJWHL provided a two-year statute of limitation, regardless of willfulness. D'Agostino, 2018 WL 1914239, at *6. While Plaintiffs may not recover damages under the NJWHL for services rendered prior to June 1, 2018, they do not request any damages for that time period in excess of those permitted by the FLSA. The discrepancy in the respective statutes of limitations is therefore immaterial.

[9] On August 6, 2019, New Jersey enacted the Wage Theft Act ("NJWTA"), which, among other things, amended the NJWPL to include an express cause of action that permits the recovery of additional remedies. N.J.SA. § 34:11-4.10(c). Courts have consistently held that the NJWTA does not apply retroactively, and Plaintiffs have not argued otherwise. See Jones, 2021 WL 1904734, at *5 (collecting cases).

### 1. Unpaid Wages

The FLSA, NJWHL, and NJWPL each permit an employee to recover unpaid compensation in a suit against an employer. 29 U.S.C. § 216(b) (FLSA); Delgado v. Auto Gallery LLC, No. 20-18593, 2021 WL 5864064, at *5 (D.N.J. Dec. 10, 2021) (NJWHL); Jones, 2021 WL 1904734, at *5 (NJWPL). A plaintiff seeking unpaid wages may avail himself of a burden-shifting framework that accounts for an employer's duty under federal and state law to maintain accurate wage and hour records. See 29 U.S.C. § 211(c); N.J.S.A. § 34:11-56a20.

First, the plaintiffs must provide evidence to show that they "in fact performed work for which [they were] improperly compensated" and to show "the amount and extent of that work as a matter of just and reasonable inference." United States ex rel. Int'l Bd. of Elec. Workers Loc. Union No. 98 v. Farfield Co., 5 F.4th 315, 350 (3d Cir. 2021) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)). This burden can be discharged "through estimates based on [the employee's] own recollection." Santiago v. Lucky Lodi Buffet Inc., No. 15-6147, 2016 WL 6138248, at *3 (D.N.J. Oct. 21, 2016).

Second, the burden shifts to the employer to produce evidence that sets forth "the precise amount of work performed" or otherwise negates the inference arising from the employees' evidence. Farfield Co., 5 F. 4th at 350 (citing Anderson, 328 U.S. at 687-88). Where an employer has defaulted and the employees aver that they were never provided with information reflecting their exact weekly hours, affidavits approximating the employees' total hours can support a default judgment. See, e.g., Santiago, 2016 WL 6138248, at *3; see also Anderson, 328 U.S. 680 at 688 (holding that if the employer fails to meet his burden, "the court may then award damages to the employee, even though the result be only approximate").

Plaintiffs have each submitted detailed affidavits which set forth their respective rates of pay and approximate work hours. See Declaration of Efrain Morales ("Efrain Decl.") ¶¶ 27-34, ECF No. 66; Declaration of Marco Tulio Morales ("Marco Decl.") ¶¶ 28-36, ECF No. 67; Declaration of Freddy Antonio Morales ("Freddy Decl.") ¶¶ 28-40, ECF No. 68. Each Plaintiff also states that "Defendants did not track [Plaintiffs'] work hours or record the hours [they] worked each day." Efrain Decl. ¶ 30; Marco Decl. ¶ 31; Freddy Decl. ¶ 31. The Court therefore relies on Plaintiffs' affidavits to calculate their unpaid wages for services rendered from June 1, 2017, to July 25, 2019.

Prior to examining Plaintiffs' affidavits, the Court notes that for claims accruing prior to August 6, 2019, an employee may recover liquidated damages under the FLSA for federal wage violations but may not recover liquidated damages for violations of the NJWHL or NJWPL. See Delgado, 2021 WL 5864064, at *5; Jones, 2021 WL 1904734, at *5. The Court must therefore distinguish between the wages owed to Plaintiffs under federal and state law and proceeds as follows. First, the Court will calculate the amounts owed to Plaintiffs arising from violations of the federal minimum wage. Second the Court will calculate the total overtime compensation due to Plaintiffs under the FLSA. Third, and finally, the Court will calculate the remaining sums due to Plaintiffs under state law.

#### a. Federal Minimum Wage Violations

Plaintiffs aver that the Cerrigone Defendants failed to pay them any wages for a period of thirteen weeks, from February to April 2019. See Efrain Decl. ¶ 34; Marco Decl. ¶ 36; Freddy

Decl. ¶ 38. Plaintiffs were entitled to a $7.25 per hour minimum wage under the FLSA for this period. 29 U.S.C. § 206(a)(1)(C). Each Plaintiff estimates that he worked 39 hours per week for four weeks during February 2019 and over 40 hours per week for nine weeks in March and April 2019, for a total of 516 hours of regular (non-overtime) compensation. See Efrain Decl. ¶ 34; Marco Decl. ¶ 36; Freddy Decl. ¶ 38.

Based on the Court's computations set forth below in Appendix 1, the Court awards a total of **$3741.00** to each Plaintiff as compensation for the Cerrigone Defendants' federal minimum wage violations under the FLSA.

### b. Overtime Compensation

The FLSA and NJWHL each provide that a non-exempt employee is owed overtime compensation at the rate of one and one-half times the employee's "regular rate" for all time worked in excess of forty hours each week. See 29 U.S.C. § 207(a)(2)(C); N.J.S.A. § 34:11-56a4(b)(1).

Plaintiffs each certify that except for the period from February 2019 to April 2019, they were paid a fixed weekly wage. See Efrain Decl. ¶¶ 32-33; Marco Decl. ¶¶ 30-35; Freddy Decl. ¶¶ 33-38. For employees paid on a weekly basis, the Court must compute the "regular rate" by "dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a). The Court must therefore make a threshold determination as to how many hours the weekly salary paid to Plaintiffs was "intended to compensate."

Plaintiffs urge the Court to apply forty hours, as "the presumptive number of work hours per week [their] weekly wages were intended to cover." K. Morales Decl. ¶¶ 64, 103, 144. The Court agrees that absent any argument by the employer that an alternate means of calculation should be used, "the regular rate is calculated by dividing the salary by 40 hours a week." Wang v. Fu Leen Meng Rest. Ltd. Liab. Co., No. 16-8772, 2018 WL 1027446, at *4 n.3 (D.N.J. Feb. 23, 2018) (citing 29 C.F.R. § 778.109).[10] The Court also accepts Plaintiffs' contention that the state minimum wage of $8.85 per hour, i.e., the minimum amount Defendants could lawfully pay Plaintiffs, represents the "regular rate" with respect to the period from March to April 2019, when Plaintiffs worked hours in excess of forty per week but received no wages. See Wang v. Chapei LLC, No. 15-2950, 2020 WL 468858, at *8 (D.N.J. Jan. 29, 2020) ("Lawful [overtime] pay is . . . calculated by taking the greater of . . . Plaintiff's actual regular rate, or the proper pay based on a regular rate at the . . . minimum [wage].") (citation omitted); N.J.S.A. § 34:11-56a4(a).

Plaintiffs' declarations approximate their weekly salaries and hours worked from June 1, 2017 to July 25, 2019. See Efrain Decl. ¶¶ 27-34; Marco Decl. ¶¶ 28-36; Freddy Decl. ¶¶ 28-40.

---

[10] The Court may calculate damages using an alternative "fluctuating work week" standard where the evidence shows that the employee and employer shared a clear "mutual understanding" that a fixed weekly salary was intended as "compensation for all hours worked each workweek." Depalma v. Scotts Co., LLC, No. 13-7740, 2019 WL 2417706, at *13 (D.N.J. June 10, 2019). In such case, the "regular rate" must be separately calculated for each week by dividing the weekly salary by the hours actually worked by the employee during that week. See 29 C.F.R. § 778.114.

Critically, "the burden is on the employer, and not the employee, to establish that the parties mutually agreed upon this form of compensation." Bredbenner v. Liberty Travel, Inc., No. 09-905, 2009 WL 2391279, at *2 (D.N.J. July 31, 2009). Where, as here, an employee contends that his wages were intended to compensate only forty hours per week, and the employer presents no evidence to the contrary, application of the "fluctuating work week" is inappropriate. See, e.g., Delgado, 2021 WL 5864064, at *4 & n.4; Wang, 2018 WL 1027446, at *4 n.3.

7

Based on the Court's review of these approximations and the computations set forth below in Appendix 2, Plaintiffs are awarded the following damages pursuant to the FLSA for the Cerrigone Defendants' overtime violations. Efrain is awarded **$83,526.66** in overtime compensation. Marco is awarded **$55,015.26** in overtime compensation. Freddy is awarded **$69,026.53** in overtime compensation.

### c. Remaining Unpaid Wages Under New Jersey Law

Having determined the total back pay owed to Plaintiffs under the FLSA, the Court must now calculate the remaining unpaid wages owed to Plaintiffs under the NJWHL and NJWPL. The Court address each statute in turn.

The NJWHL provides for a minimum wage of $8.85 per hour for services rendered from February to April 2019, the period when Plaintiffs received no wages. N.J.S.A. § 34:11-56a4(a). Because New Jersey's minimum wage exceeds the federal standard, Plaintiffs are entitled to additional compensation for the 516 regular time hours they each worked during this period. As set forth below in Appendix 3, the Court calculates the additional sums owed to Plaintiffs by subtracting the minimum wages previously awarded under the FLSA from the total minimum wages owed under the NJWHL. Plaintiffs are each awarded an additional **$825.60** for the Cerrigone Defendants' minimum wage violations under the NJWHL.[11]

The NJWPL permits Plaintiffs to recover all weekly wages that the Cerrigone Defendants owed to them but did not pay. See Jones, 2021 WL 1904734, at *5. Plaintiffs certify that the Cerrigone Defendants failed to pay the weekly wages promised to them for a thirteen week period from February to April 2019. See Efrain Decl. ¶ 34; Marco Decl. ¶ 36; Freddy Decl. ¶ 38.[12] They ask the Court to calculate the "remaining weekly wages" owed to them for this period by subtracting the amounts previously awarded for Defendants' minimum wage and overtime violations from their total agreed upon weekly wage. See, e.g., K. Morales Decl. ¶¶ 85, 87. Plaintiffs concede that they are not entitled to additional damages for any period where the sum of their minimum wage and overtime awards exceed the total agreed upon wage. See, e.g., id. ¶ 127. The Court agrees this approach is necessary to avoid a double recovery of unpaid compensation.

From February to April 2019, Defendants owed Efrain a weekly wage of $1100, Marco a weekly wage of $700, and Freddy a weekly wage of $900. See Efrain Decl. ¶ 33; Marco Decl. ¶ 35; Freddy Decl. ¶ 38. As set forth below in Appendix 4, Plaintiffs are entitled to the following additional damages under the NJWPL. Efrain is awarded **$5191.64**. Marco is awarded **$1419.40**. Freddy is awarded **$2591.64**.

### 2. FLSA Liquidated Damages

Plaintiffs next request liquidated damages arising from the Cerrigone Defendants' FLSA violations. The FLSA provides that an employer is typically liable for an additional amount equal to the total unpaid wages as liquidated damages. 29 U.S.C. § 216(b). Liquidated damages may

---

[11] Both the FLSA and NJWHL provide for overtime compensation at one and one half an employee's regular rate of pay. N.J.S.A. § 34:11-56a4(a). Any overtime compensation owed to Plaintiffs under the NJWHL is therefore subsumed within the damages previously awarded under the FLSA.

[12] Freddy further avers that from May to July 2019, Defendants owed Freddy a wage of $900 per week but only paid him $750 per week. Freddy Decl. ¶ 40. As set forth below, Freddy is not entitled to additional damages under the NJWPL for this time period.

only be reduced or denied where the employer proves that it acted in "good faith" and with "reasonable grounds to believe" that it was not violating the FLSA. 29 U.S.C. § 260.

The Cerrigone Defendants have offered no evidence of good faith, and Plaintiffs are therefore entitled to full awards of liquidated damages for Defendants' federal minimum wage and overtime violations. Efrain is awarded **$87,267.66** in liquidated damages. Marco is awarded **$58,756.26** in liquidated damages. Freddy is awarded **$72,767.53** in liquidated damages.

### 3. Pre-Judgment Interest

In addition to liquidated damages, Plaintiffs seek prejudgment interest on all unpaid wages owed by the Cerrigone Defendants. However, prejudgment interest is "not available to parties that are awarded liquidated damages" under the FLSA because both prejudgment interest and liquidated damages "serve the same purpose, namely to compensate employees for losses caused by delayed receipt of wages they are due." Punter v. Jasmin Int'l Corp., No. 12-7828, 2014 WL 4854446, at *6 (D.N.J. Sept. 30, 2014) (collecting cases). The Court therefore denies Plaintiffs' present request for prejudgment interest as overbroad.

Nevertheless, Plaintiffs are entitled to prejudgment interest on their damages for additional unpaid wages under the NJWHL and NJWPL. See id. Within thirty (30) days of this Order, Plaintiffs may file a supplemental motion for default judgment directed solely to the issue of prejudgment interest on Plaintiffs' state law claims. Plaintiffs' motion shall set forth the proper date of accrual and interest rate, explain why these terms are appropriate, and include a certification calculating the total amount of prejudgment interest from the date of accrual through to the date of this Order.

### 4. Attorney's Fees and Costs

Plaintiffs last ask the Court to award them costs and reasonable attorney's fees, as permitted by the FLSA and NJWHL. See 29 U.S.C. § 216(b); N.J.S.A. § 34:11-56a25. The Court determines the reasonableness of attorney's fees using the "lodestar approach," under which "the number of hours worked multiplied by the prevailing hourly rate" carries a "strong presumption" of "reasonableness." See Souryavong v. Lackawanna County, 872 F.3d 122, 128 (3d Cir. 2017). Courts in this District routinely find hourly rates between $275 and $450 to be reasonable in FLSA actions, depending on the experience of the attorneys. See, e.g., Wang, 2018 WL 1027446, at *5 (collecting cases).

Plaintiffs seek an award of $36,710.00 in fees for services rendered by Katz Melinger PLLC, representing (a) 1.8 hours worked by Kenneth Katz, the firm's sole member, at a rate of $425 per hour; (b) 2 hours worked by Nicole Grunfeld, a senior associate, at a rate of $375 per hour; (c) 6.4 hours worked by Adam Sackowitz, an associate, at a rate of $300 per hour; and (d) 121 hours worked by Katherine Morales, an associate, at a rate of $275 per hour. See K. Morales Decl. ¶¶ 178-80. Plaintiff also requests $2861.76 in costs for process service, filing, and translation services in connection with this matter. Id. ¶ 182. In support, Plaintiffs' counsel has submitted detailed time records reflecting the time expended on this action and attached invoices supporting the request for costs. Id. Exs. 18-19.

The Court has reviewed counsel's billing records and finds that the hourly rate and hours expended by counsel are reasonable. Among other things, counsel expended significant time and effort in preparing and serving the Complaint, repeatedly attempting to correspond with the

9

Cerrigone Defendants before seeking a default judgment, and preparing the instant Motion and the detailed declarations accompanying it. See id. Ex. 18. The Court is also satisfied that Plaintiffs' request for costs is supported by record evidence. Plaintiffs are therefore entitled to an award of **$36,710.00** in fees and **$2861.76** in costs as prevailing parties.

### D.    Propriety of Default Judgment

Finally, before granting a default judgment the Court must make explicit factual findings as to (1) whether the party subject to default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Doug Brady, Inc., 250 F.R.D. at 177.

First, as the Cerrigone Defendants have not filed an answer or otherwise responded to the Complaint, "the Court has no information indicating that Defendants . . . in fact possess a meritorious defense." Giftboxcenter, LLC v. Petbox, Inc., No. 15-4390, 2018 WL 734664, at *4 (D.N.J. Feb. 5, 2018). Second, Plaintiffs will suffer prejudice absent entry of default judgment, as they would have no other means of obtaining relief. See Joe Hand Promotions, Inc. v. Waldron, No. 11-849, 2013 WL 1007398, at *4 (D.N.J. Mar. 13, 2013). Third, the Cerrigone Defendants' failure to respond to the Complaint without explanation "permits the Court to draw an inference of culpability on [their] part." See id. Plaintiffs' counsel certifies that despite numerous communications with Cerrigone from June 2020 to July 2021, the Cerrigone Defendants have failed to file an answer, appear at any status conference held by the Court, or otherwise defend this lawsuit. See K. Morales Decl. ¶¶ 14-34.

Consequently, the Court finds that entry of a default judgment against the Cerrigone Defendants is appropriate.

### IV.    CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Default Judgment, ECF No. 64, is **GRANTED**. Judgment is hereby entered against the Cerrigone Defendants as follows.

- Judgment is entered in favor of Efrain Morales in the amount of **$180,552.56**, consisting of:
    - $3741.00 in minimum wages under the FLSA;
    - $83,526.66 in overtime compensation under the FLSA;
    - $87,267.66 in liquidated damages under the FLSA;
    - $825.60 in additional minimum wages under the NJWHL; and
    - $5191.64 in additional unpaid weekly wages under the NJWPL.

- Judgment is entered in favor of Marco Tulio Morales in the amount of $**119,757.52**, consisting of:
    - $3741.00 in minimum wages under the FLSA;
    - $55,015.26 in overtime compensation under the FLSA;
    - $58,756.26 in liquidated damages under the FLSA;
    - $825.60 in additional minimum wages under the NJWHL; and
    - $1419.40 in additional unpaid weekly wages under the NJWPL.

- Judgment is entered in favor of Freddy Antonio Morales in the amount of **$148,952.30**, consisting of:
    - $3741.00 in minimum wages under the FLSA;
    - $69,026.53 in overtime compensation under the FLSA;
    - $72,767.53 in liquidated damages under the FLSA;
    - $825.60 in additional minimum wages under the NJWHL; and
    - $2591.64 in additional unpaid weekly wages under the NJWPL.

- Additionally, judgment is entered in favor of all Plaintiffs in the amount of **$39,571.76**, consisting of $36,710.00 in reasonable attorney's fees and $2861.76 in costs.

Plaintiffs may file a supplemental motion for default judgment directed to the issue of prejudgment interest on Plaintiffs' state law claims within thirty (30) days of this Order. Should Plaintiffs fail to timely submit such a motion, Plaintiffs will be entitled to only the total judgment reflected in this Order.

**SO ORDERED.**

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

## APPENDIX 1 – UNPAID FEDERAL MINIMUM WAGES FOR REGULAR TIME WORK

**Efrain Morales** (Efrain Decl. ¶¶ 28-29, 34)

| Time Period | Approximate Number of Weeks | Regular Hours Worked Per Week | Total Regular Hours Worked | Federal Minimum Wage | Federal Minimum Wages Owed for Regular Time Work (Regular Hours * $7.25) |
|---|---|---|---|---|---|
| 02/01/17-02/28/18 | 4 | 39 | 156 | $7.25 | **$1131.00** |
| 03/01/19-04/30/19 | 9 | 40 | 360 | $7.25 | **$2610.00** |

**TOTAL: $3741.00**

**Marco Tulio Morales** (Marco Decl. ¶¶ 29-30, 36)

| Time Period | Approximate Number of Weeks | Regular Hours Worked Per Week | Total Regular Hours Worked | Federal Minimum Wage | Federal Minimum Wages Owed for Regular Time Work (Regular Hours * $7.25) |
|---|---|---|---|---|---|
| 02/01/17-02/28/18 | 4 | 39 | 156 | $7.25 | **$1131.00** |
| 03/01/19-04/30/19 | 9 | 40 | 360 | $7.25 | **$2610.00** |

**TOTAL: $3741.00**

**Freddy Antonio Morales** (Freddy Decl. ¶¶ 29-30, 38)

| Time Period | Approximate Number of Weeks | Regular Hours Worked Per Week | Total Regular Hours Worked | Federal Minimum Wage | Federal Minimum Wages Owed for Regular Time Work (Regular Hours * $7.25) |
|---|---|---|---|---|---|
| 02/01/17-02/28/18 | 4 | 39 | 156 | $7.25 | **$1131.00** |
| 03/01/19-04/30/19 | 9 | 40 | 360 | $7.25 | **$2610.00** |

**TOTAL: $3741.00**

## APPENDIX 2 – UNPAID OVERTIME COMPENSATION

**Efrain Morales** (Efrain Decl. ¶¶ 27-34)

| Time Period | Approximate Number of Weeks | Hours Exceeding 40 Per Week | Total OT Hours | Weekly Wage | Regular Rate (Weekly Wage / 40) | OT Rate (Regular Rate * 1.5) | Unpaid Overtime Compensation (Total OT Hours * OT Rate) |
|---|---|---|---|---|---|---|---|
| 06/01/17-07/05/18 | 57 | 15 | 855 | $850 | $21.25 | $31.88 | **$27,257.40** |
| 07/06/18-11/30/18 | 21 | 38 | 798 | $1,100 | $27.50 | $41.25 | **$32,917.50** |
| 03/01/19-04/30/19 | 9 | 38 | 342 | N/A | $8.85 | $13.28 | **$4541.76** |
| 05/01/19-07/25/19 | 12 | 38 | 456 | $1,100 | $27.50 | $41.25 | **$18,810.00** |

**TOTAL: $83,526.66**

**Marco Tulio Morales** (Marco Decl. ¶¶ 28-36)

| Time Period | Approximate Number of Weeks | Hours Exceeding 40 Per Week | Total OT Hours | Weekly Wage | Regular Rate (Weekly Wage / 40) | OT Rate (Regular Rate * 1.5) | Unpaid Overtime Compensation (Total OT Hours * OT Rate) |
|---|---|---|---|---|---|---|---|
| 06/01/17-01/14/18 | 32 | 15 | 480 | $525 | $13.13 | $19.70 | **$9456.00** |
| 01/15/18-07/05/18 | 24 | 15 | 360 | $600 | $15.00 | $22.50 | **$8100.00** |
| 07/06/18-11/30/18 | 21 | 38 | 798 | $700 | $17.50 | $26.25 | **$20,947.50** |
| 03/01/19-04/30/19 | 9 | 38 | 342 | N/A | $8.85 | $13.28 | **$4541.76** |
| 05/01/19-07/25/19 | 12 | 38 | 456 | $700 | $17.50 | $26.25 | **$11,970.00** |

**TOTAL: $55,015.26**

**Freddy Antonio Morales** (Freddy Decl. ¶¶ 28-40)

| Time Period | Approximate Number of Weeks | Hours Exceeding 40 Per Week | Total OT Hours | Weekly Wage | Regular Rate (Weekly Wage / 40) | OT Rate (Regular Rate * 1.5) | Unpaid Overtime Compensation (Total OT Hours * OT Rate) |
|---|---|---|---|---|---|---|---|
| 06/01/17-06/30/17 | 4 | 25 | 100 | $500 | $12.50 | $18.75 | **$1875.00** |
| 07/01/17-07/05/18 | 53 | 25 | 1325 | $550 | $13.75 | $20.63 | **$27,334.75** |
| 07/06/18-11/30/18 | 21 | 38 | 798 | $750 | $18.75 | $28.13 | **$22,447.74** |
| 03/01/19-04/30/19 | 9 | 38 | 342 | N/A | $8.85 | $13.28 | **$4541.76** |
| 05/01/19-07/25/19 | 12 | 38 | 456 | $750 | $18.75 | $28.13 | **$12,827.28** |

**TOTAL: $69,026.53**

## APPENDIX 3 – ADDITIONAL UNPAID NJ MINIMUM WAGES FOR REGULAR TIME WORK

**Efrain Morales** (Efrain Decl. ¶¶ 28-29, 34)

| Time Period | Total Regular Hours Worked | NJ Minimum Wage | NJ Minimum Wages Owed for Regular Time Work (Regular Hours * $8.85) | Federal Minimum Wages Previously Awarded | Additional NJ Minimum Wages Owed |
|---|---|---|---|---|---|
| 02/01/17-02/28/18 | 156 | $8.85 | $1380.60 | $1131.00 | **$249.60** |
| 03/01/19-04/30/19 | 360 | $8.85 | $3186.00 | $2610.00 | **$576.00** |

**TOTAL: $825.60**

**Marco Tulio Morales** (Marco Decl. ¶¶ 29-30, 36)

| Time Period | Total Regular Hours Worked | NJ Minimum Wage | NJ Minimum Wages Owed for Regular Time Work (Regular Hours * $8.85) | Federal Minimum Wages Previously Awarded | Additional NJ Minimum Wages Owed |
|---|---|---|---|---|---|
| 02/01/17-02/28/18 | 156 | $8.85 | $1380.60 | $1131.00 | **$249.60** |
| 03/01/19-04/30/19 | 360 | $8.85 | $3186.00 | $2610.00 | **$576.00** |

**TOTAL: $825.60**

**Freddy Antonio Morales** (Freddy Decl. ¶¶ 29-30, 38)

| Time Period | Total Regular Hours Worked | NJ Minimum Wage | NJ Minimum Wages Owed for Regular Time Work (Regular Hours * $8.85) | Federal Minimum Wages Previously Awarded | Additional NJ Minimum Wages Owed |
|---|---|---|---|---|---|
| 02/01/17-02/28/18 | 156 | $8.85 | $1380.60 | $1131.00 | **$249.60** |
| 03/01/19-04/30/19 | 360 | $8.85 | $3186.00 | $2610.00 | **$576.00** |

**TOTAL: $825.60**

## APPENDIX 4 – REMAINING UNPAID WEEKLY WAGES

**Efrain Morales** (Efrain Decl. ¶¶ 33-34)

| Time Period | Approximate Number of Weeks | Unpaid Weekly Wage | Total Unpaid Weekly Wages | Minimum Wages Previously Awarded | OT Compensation Previously Awarded | Remaining Unpaid Wages |
|---|---|---|---|---|---|---|
| 02/01/17-02/28/18 | 4 | $1,100 | $4,400.00 | $1380.60 | $0.00 | **$3019.40** |
| 03/01/19-04/30/19 | 9 | $1,100 | $9,900.00 | $3186.00 | $4541.76 | **$2172.24** |

**TOTAL: $5191.64**

**Marco Tulio Morales** (Marco Decl. ¶¶ 35-36)

| Time Period | Approximate Number of Weeks | Unpaid Weekly Wage | Total Unpaid Weekly Wages | Minimum Wages Previously Awarded | OT Compensation Previously Awarded | Remaining Unpaid Wages |
|---|---|---|---|---|---|---|
| 02/01/17-02/28/18 | 4 | $700 | $2,800.00 | $1380.60 | $0.00 | **$1419.40** |
| 03/01/19-04/30/19 | 9 | $700 | $6,300.00 | $3186.00 | $4541.76 | **$0.00** |

**TOTAL: $1419.40**

**Freddy Antonio Morales** (Freddy Decl. ¶¶ 38, 40)

| Time Period | Approximate Number of Weeks | Unpaid Weekly Wage | Total Unpaid Weekly Wages | Minimum Wages Previously Awarded | OT Compensation Previously Awarded | Remaining Unpaid Wages |
|---|---|---|---|---|---|---|
| 02/01/17-02/28/18 | 4 | $900 | $3600.00 | $1380.60 | $0.00 | **$2219.40** |
| 03/01/19-04/30/19 | 9 | $900 | $8100.00 | $3186.00 | $4541.76 | **$372.24** |
| 05/01/19-07/25/19 | 12 | $150 | $1800.00 | $0.00 | $12,827.28 | **$0.00** |

**TOTAL: $2591.64**